IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **OTIS STEWART, # B-25889,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 15-cv-1322-MJR |
| ) | |
| **WEXFORD HEALTH SOURCES, INC.,** ) | |
| **DR. GARCIA, JOHN COE,** ) | |
| **DR. FENOGLIO, PHILLIP MARTIN,** ) | |
| **WARDEN STEPHEN DUNCAN,** ) | |
| **MIKE GUYER, C/O CHRISTIAN,** ) | |
| **CHARLES TANNER,** ) | |
| **and C/O LEWIS,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff, currently incarcerated at Lawrence Correctional Center ("Lawrence"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is serving sentences of 35 years and 20 years. He claims that several Defendants have been deliberately indifferent to his serious medical conditions, and others subjected him to unsanitary conditions in his cell. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable

person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At the preliminary review stage, the factual allegations of a pro se complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

**The Complaint**

Plaintiff organizes his complaint into four claims; the Court will follow this structure in summarizing and reviewing the complaint.

**Count 1:** In 2009, Plaintiff had surgery for a tumor on his pituitary gland (Doc. 1, pp. 6, 16). On August 15, 2014, Plaintiff had a follow-up visit with his neurosurgeon, where he learned that the tumor (which had been only partially removed) had grown in size (Doc. 1, p. 6). Moreover, the doctor told Plaintiff that he should have been coming in for a consultation at least once a year, so the tumor could be treated if necessary before it affected Plaintiff's eyesight, and to prevent the need for another surgery. Before Plaintiff had the first surgery, the tumor had caused him to go blind.

Defendants Fenoglio and Martin (Lawrence doctors) and Defendant Wexford Health Source, Inc. ("Wexford") knew that Plaintiff's tumor had begun to grow again, and knew that the specialist had ordered yearly follow-up visits. Plaintiff also informed them that he was

suffering severe headaches and some vision loss. However, these Defendants failed to send Plaintiff back to see the neurosurgeon on the recommended schedule. According to Defendant Fenoglio, it was Defendant Wexford's policy to only send Plaintiff for a neurosurgical consultation if he completely loses his sight (Doc. 1, p. 8).

**Count 2:** On July 14, 2015, one of the lenses in Plaintiff's prescription transition (tinted) glasses fell out and broke while he was on his way to a class (Doc. 1, p. 9). He reported the problem to Major Jennings (who is not a Defendant) and Defendant Christian, explaining that he needed a replacement as soon as possible because due to his medical condition, his eyes are highly sensitive to light. Defendant Jennings was to contact health care about the problem. However, Defendant Christian refused to send Plaintiff to health care, instead ordering him to leave the academic building.

Outside the building, Defendant Tanner tried to take Plaintiff's glasses (which still contained one good lens). The sunlight was very bright and painful for Plaintiff without the proper glasses. Plaintiff explained that he had a medical permit for the glasses and needed to go to health care for a replacement. Defendant Tanner refused to allow Plaintiff to go to health care, and made him go back to his cell house.

Back at the cell house, Defendant Lewis confiscated the glasses, dismissing Plaintiff's explanation that he had a permit and needed them to protect his eyes. He refused to look at Plaintiff's medical permit, saying that it was "probably fake anyway" (Doc. 1, p. 11). He denied Plaintiff's request to be allowed to go to health care.

**Count 3:** On June 26, 2015, the toilet in Plaintiff's cell broke. Plaintiff reported the problem, and was told that a work order was put in to the plumber (Defendant Guyer or

Dryer)[1] (Doc. 1, pp. 3, 13).  However, seven days went by before the plumbing was repaired. During this time, Defendant Warden Duncan was aware of the inhumane conditions, but did nothing to mitigate them.  He failed to provide Plaintiff with any cleaning supplies or with a bucket that he could use to flush the toilet, which was filled with urine and feces.  The prison was on lockdown, so Plaintiff and his cellmate were forced to remain in the cell, continuing to use the broken toilet and endure the stench.  They had to eat their meals in these conditions, and could not wash up.

**Count 4:**   On April 24, 2015, Plaintiff woke up at 1:30 a.m. because he was choking on a foreign object in his windpipe and could not breathe (Doc. 1, p. 15).  He eventually coughed and vomited up the object – a piece of plastic which he believed was some medical equipment left inside him after his 2009 pituitary surgery.  His throat was painful, scarred, and torn, and he was unable to eat or drink for several days.  He saw a nurse in the morning and requested to see a doctor.  However, because Defendant Wexford had a policy of not providing a full time doctor at the prison, Plaintiff had to wait several days for care.

Plaintiff was unable to see the doctor (Defendant Coe) until April 30, 2015. Defendant Coe informed Plaintiff that his neurosurgeon had issued an order for Plaintiff to see an ear, nose, & throat specialist.  However, Defendant Garcia and Defendant Wexford denied that request.  Defendant Coe stated that Defendant Wexford would not pay for the specialist visit, and Defendant Coe himself refused to examine Plaintiff's throat for damage.

Plaintiff requests compensatory and punitive damages (Doc. 1, pp. 19-23).

---

[1] Plaintiff lists Defendant Guyer among the parties, and describes him as a plumber (Doc. 1, p. 3). However, in the statement of claim, Plaintiff refers to the plumber as "Defendant Dryer" (Doc. 1, pp. 13-14).  The Court presumes that Plaintiff is referring to a single individual, but is confused as to the spelling of his name.  The plumber shall be referred to herein as Defendant Guyer/Dryer.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Based on the allegations of the complaint, the Court finds it convenient to maintain the division of Plaintiff's action into the following four counts.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.  The designation of these counts does not constitute an opinion as to their merit.

> **Count 1:**  Eighth Amendment deliberate indifference claim against Defendants Fenoglio, Martin, and Wexford, for failing to provide Plaintiff with timely follow-up examinations as ordered by his neurosurgeon, thus delaying treatment for his tumor;
>
> **Count 2:**  Eighth Amendment deliberate indifference claim against Defendants Christian, Tanner, and Lewis, who refused to allow Plaintiff to obtain a replacement for his broken prescription glasses, and against Defendant Lewis for confiscating the glasses;
>
> **Count 3:**  Eighth Amendment deliberate indifference claim against Defendants Guyer/Dryer and Duncan, who failed to correct the unsanitary conditions in Plaintiff's cell caused by the broken toilet;
>
> **Count 4:**  Eighth Amendment deliberate indifference claim against Defendants Garcia, Coe, and Wexford, for delaying treatment for Plaintiff's injured throat and refusing to follow the neurosurgeon's request for Plaintiff to see another specialist.

Accepting Plaintiff's allegations as true, Counts 1-4 shall be allowed to proceed for further review against some Defendants.  However, Counts 2 and 3 shall be severed into two separate actions, because each of these claims involves distinct legal and factual issues, and different Defendants, from Counts 1 and 4.

In *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), the Seventh Circuit emphasized that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act.  *George,* 507

F.3d at 607, (citing 28 U.S.C. § 1915(b), (g)). Count 2 is related to Plaintiff's medical needs, but is against three officials who refused to help Plaintiff obtain replacement prescription glasses. Count 3 raises a claim for unsanitary cell conditions. These claims have nothing to do with the claims in Counts 1 and 4 against Plaintiff's medical providers for failing to properly treat his medical conditions, and are not properly joined in the same action. Counts 2 and 3 arose from separate transactions and occurrences, involving different parties, and must proceed in different lawsuits. *See* FED. R. CIV. P. 20(a)(2).

Consistent with the *George* decision and Federal Rule of Civil Procedure 21, the Court shall sever **Count 2** and **Count 3** of Plaintiff's complaint, and shall open two new cases, each with a newly-assigned case number. A new filing fee shall be assessed for each of the new severed cases.

**Count 1 – Failure to Provide Surgical Follow-up**

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015). The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112

F.3d 262, 267 (7th Cir. 1997). Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

"Allegations that a prison official refused to follow the advice of a medical specialist for a non-medical reason may at times constitute deliberate indifference." *Perez v. Fenoglio*, 792 F.3d 778 (7th Cir. 2015). Likewise, a prison doctor who deliberately disregards express post-operative instructions regarding an inmate's medical care may be found to have violated the Eighth Amendment. *See Gil v. Reed*, 381 F.3d 649, 662-64 (7th Cir. 2004) (prison doctor prescribed Tylenol despite surgeon's express warning to avoid that medication); *Jones v. Simek*, 193 F.3d 485, 490 (7th Cir. 1999) (prison doctor refused to follow specialists' instructions regarding inmate's treatment).

Plaintiff suffered from a pituitary tumor that caused him to lose his eyesight until the tumor was partially removed. His surgeon ordered yearly checkups to monitor his condition. Plaintiff learned that the tumor was growing, and he was experiencing headaches and vision impairment. Clearly, this was an objectively serious medical condition, and the Defendants were aware of it.

Turning to the subjective requirement, Plaintiff asserts that Defendants Fenoglio and Martin knew that the surgeon had ordered regular checkups in order to provide timely diagnosis and treatment of any recurrence, yet they failed to send him for the yearly follow-up. Defendant Wexford allegedly would not authorize any follow-up specialist consultation unless Plaintiff lost his sight entirely. A corporation such as Defendant Wexford can be held liable for deliberate indifference if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir.

2004). *See also Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action). At this stage, plaintiff's allegations are sufficient to warrant further consideration of his deliberate indifference claim in **Count 1** against Defendant Wexford, as well as against Defendants Fenoglio and Martin.

### Count 2 – Confiscation of Prescription Glasses

Plaintiff informed Defendants Christian and Tanner that he had a serious medical condition affecting his eyes, and needed his special glasses to protect them. He told them he had a medical permit for the prescription glasses, and needed to go to the health care department to seek a replacement when his lens broke. However, Defendants Christian and Tanner refused Plaintiff's requests. Defendant Lewis likewise refused to listen to Plaintiff, would not look at his medical permit, and took the glasses without allowing Plaintiff to seek a replacement.

A medical need is "serious" where it has either "been diagnosed by a physician as mandating treatment" or where the need is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). Plaintiff informed these Defendants of his serious condition, yet they ignored him and refused to allow him to see the officials who could address his medical needs. At this stage, **Count 2** may also proceed, against Defendants Christian, Tanner, and Lewis, in a separate severed case.

### Count 3 – Unsanitary Cell Conditions

In a case involving conditions of confinement in a prison, two elements are required to establish a violation of the Eighth Amendment's cruel and unusual punishments clause. First, an objective element requires a showing that the conditions deny the inmate "the

minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The second requirement is a subjective element – establishing a defendant's culpable state of mind, which is deliberate indifference to a substantial risk of serious harm to the inmate from those conditions. *Farmer*, 511 U.S. at 837, 842.

Unsanitary conditions similar to those described by the Plaintiff here may state a claim under the Eighth Amendment. *See Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013) ("unhygienic conditions, when combined with the jail's failure to provide detainees with a way to clean for themselves with running water or other supplies, state a claim for relief"); *Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (prisoner held in cell for three to six days with no working sink or toilet, floor covered with water, and walls smeared with blood and feces); *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992) (summary judgment improper where inmate alleged he lived with "filth, leaking and inadequate plumbing, roaches, rodents, the constant smell of human waste, . . . [and] unfit water to drink[.]"); *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989) (inmate held for three days in cell with no running water and feces smeared on walls); *see also DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (thirty-six hours with no working toilet, flooded cell and exposure to human waste as well as the odor of accumulated urine, stated Eighth Amendment claim).

In the instant case, Plaintiff describes ongoing exposure to his own and his cellmate's human waste in their cell for a full week, during which he was subjected to the constant odor of urine and feces. He had to eat in this cell because the prison was on lockdown, and was unable to wash. These unsanitary and hazardous conditions meet the objective component of a constitutional violation.

As to the subjective component, Plaintiff's alleges that Defendant Guyer/Dryer received multiple work orders to repair the problem. He also may have been aware of the condition of Plaintiff's cell when he fixed a plumbing problem in the cell next door.[2] Plaintiff further states that Defendant Warden Duncan had been made aware of the cell conditions, yet did nothing to correct the problem.

Prison officials' failure to take adequate steps to prevent inmates' exposure to human waste can amount to deliberate indifference. *See Jackson*, 955 F.2d at 22. Giving liberal construction to Plaintiff's factual allegations, he has stated a claim for relief that shall receive further consideration. **Count 3** shall proceed, but in a separate severed action.

**Count 4 – Delay and Refusal to Provide Recommended Specialist Examination**

After Plaintiff's choking incident on April 24, 2015, he was unable to see a doctor (Defendant Coe) for approximately six days. He blames the delay on Defendant Wexford's policy of not having a full-time doctor on site. When Defendant Coe did see Plaintiff, he told Plaintiff that despite the order of Plaintiff's neurosurgeon, he would not be sent to an ear, nose, and throat specialist for a follow-up examination. This decision was made by Defendant Garcia, and was due to Defendant Wexford's refusal to pay for the specialist. Defendant Coe himself refused to examine or treat Plaintiff for the pain and injury to his throat caused by the foreign object.

Based on Plaintiff's description of the object and how it appeared in his windpipe, it is logical to conclude that this incident was related to Plaintiff's tumor surgery for his serious pituitary condition, thus satisfying the objective element of a deliberate indifference claim. And, given that Plaintiff's neurosurgeon was concerned enough about his condition to order a

---

[2] Plaintiff states that a plumber made repairs to a neighboring cell but did not address Plaintiff's problems (Doc. 1-1, pp. 3-4). However, he does not say whether that plumber was Defendant Guyer/Dryer.

specialist referral, Defendants Coe, Garcia, and Wexford were aware of the potential for serious harm to Plaintiff from this incident. Both the delay in Plaintiff's doctor visit, and the refusal to follow the specialist's recommendation for Plaintiff to be examined by a second outside specialist, may support an Eighth Amendment claim for deliberate indifference to a serious medical need. *See Perez v. Fenoglio*, 792 F.3d 778 (7th Cir. 2015); *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012). **Count 4** shall thus proceed for further review in this action.

**Pending Motions**

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to the United States Magistrate Judge for further consideration.

The motion for service of process at government expense (Doc. 4) is **GRANTED.** Service shall be ordered below on those Defendants who remain in this action.

**Disposition**

**IT IS HEREBY ORDERED** that the following claims, which are unrelated to the deliberate indifference claims that shall remain in this case under **COUNTS 1 and 4**, are **SEVERED** into two new cases. The new cases shall be:

(1) **COUNT 2** against **DEFENDANTS CHRISTIAN, TANNER,** and **LEWIS,** for preventing Plaintiff from visiting health care to replace his broken prescription glasses, and against **DEFENDANT LEWIS** for confiscating the glasses;

(2) **COUNT 3** against **DEFENDANTS GUYER/DRYER** and **DUNCAN,** for housing Plaintiff in unsanitary conditions and failing to repair his broken toilet for seven days.

In each new case, the Clerk is **DIRECTED** to file the following documents:

(1) This Memorandum and Order
(2) The Original Complaint (Doc. 1)
(3) Plaintiff's motion to proceed *in forma pauperis* (Doc. 2)
(4) Plaintiff's motion for the recruitment of counsel (Doc. 3).

Plaintiff **will be responsible for an additional $350.00 filing fee** in each new case.

**IT IS FURTHER ORDERED** that the *only claims remaining in this action are COUNT 1 and COUNT 4 against Defendants WEXFORD HEALTH SOURCES, INC., GARCIA, COE, FENOGLIO, and MARTIN*, for deliberate indifference to Plaintiff's medical needs.  This case shall now be captioned as: **OTIS STEWART, Plaintiff, vs. WEXFORD, GARCIA, COE, FENOGLIO, and MARTIN, Defendants.**

**IT IS FURTHER ORDERED** that Defendants **DUNCAN, GUYER/DRYER, CHRISTIAN, TANNER, and LEWIS** are **TERMINATED** from *this* action with prejudice.

As to **COUNTS 1 and 4**, which remain in the instant case, the Clerk of Court shall prepare for Defendants **WEXFORD HEALTH SOURCES, INC., GARCIA, COE, FENOGLIO,** and **MARTIN**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any

documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Stephen C. Williams** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into

a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: January 4, 2016**

s/ MICHAEL J. REAGAN
Chief Judge
United States District Court